**PERRY v. PERRY.**

No. 10708.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1951.

Decided April 12, 1951.

Proctor, Circuit Judge, dissented.

Henry Lincoln Johnson, Jr., Washington, D. C., with whom Thurman L. Dodson and Curtis P. Mitchell, Washington, D. C., were on the brief, for appellant.

Henry J. Siegman, Washington, D. C., with whom John J. O'Brien, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, PROCTOR, and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant sued in the District Court to enjoin appellee, his former wife, from continuing her previously-instituted suit against appellant's present wife for alienation of affection and criminal conversation. His complaint alleged that in June 1949 appellee had joined him in executing a "Separation Agreement and Financial Settlement." That agreement recites that "the parties have agreed among themselves

on a settlement of all property rights and differences existing between them" and includes among its terms the following provision: "1. Neither of them, the husband or wife, shall molest the other of them or compel or endeavor to compel the other to cohabit or dwell with him or her by any legal proceedings for restitution of conjugal rights or otherwise whatsoever." [1] According to appellant, appellee's suit instituted in January 1950 sought to air charges which the non-molestation agreement was intended to foreclose. Appellee's answer below was that the "Separation Agreement and Financial Settlement" was obtained from her by misrepresentation, coercion, and without adequate consideration and also that it did not bar a suit against appellant's present wife. Appellee also filed a counterclaim asking that the agreement and appellee's divorce from appellant be declared void and that permanent maintenance be awarded her.

The present appeal is from the District Court's denial of appellant's motion for a preliminary injunction,[2] in which he sought to restrain appellee from prosecuting her independent suit and her counterclaim in the present suit until the court could dispose of the merits of his contention under the non-molestation agreement. No motion to dismiss was granted below, as was the case in McDonald v. McDonald, 88 U.S. App.D.C. —, 189 F.2d 24 (March 22, 1951). The preliminary injunction was apparently denied by the trial court on the ground that the written agreement concerned property rights alone and therefore constituted no bar to appellee's suit here involved. A stay pending appeal was denied by the trial court on the ground that no further irreparable injury to plaintiff would result than had already occurred.

■ When a motion for preliminary injunction is presented to a court in advance of hearing on the merits, it is called upon to exercise its discretion "upon the basis of a series of estimates: the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally. A mere listing of the guiding considerations demonstrates their intangible nature, especially when no attempt is made at this stage to decide finally the questions raised." Concurring opinion in Communist Party v. McGrath, D.C., 96 F.Supp. 47, 48. We think the denial of preliminary relief below proceeded from an erroneous premise which prevented the court from striking the proper balance in this case.

■ We are not confronted here with a decision based upon a weighing of the "candor and credibility of the witnesses".[3] " 'Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we may ignore the trial judge's finding and substitute our own * * * if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance.' "[4] The lower

1. The "Separation Agreement and Financial Settlement" began by reciting that the parties were living apart and intended to do so permanently. It continued:

"Whereas, the parties have agreed among themselves on a settlement of all property rights and differences existing between them;

"Now therefore in full settlement, adjustment and compromise of all property rights between the parties hereto as husband and wife both now and after the death of either party, the wife for and in consideration of two thousand ($2,000) dollars to her paid by the husband and the receipt of which is hereby acknowledged agrees that:" [J.App. 26–27]

Paragraph 1, which we quote above, follows at this point. In paragraphs 2 to 5 of the agreement, the parties renounced all interest in each other's property and appellee renounced all claim to support or alimony.

2. Jurisdiction of such an appeal is conferred upon us by 28 U.S.C.A. § 1292.

3. United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.

4. Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537, 539, quoted in Dollar v. Land, 1950, 87 U.S.App.D.C. 214, 184 F.2d 245, 249.

court's denial of a preliminary injunction was based solely upon its construction of the written agreement.[5] Looking to that agreement, we cannot agree that the non-molestation clause thereof, on its face, extends only to property disputes between the parties. That clause expresses in the broadest terms the agreement of the parties not to molest each other by the institution of "any legal proceedings for restitution of conjugal rights or otherwise whatsoever." It seem clear to us that, by using the words "or otherwise whatsoever," the parties sought, at the very least, to bar molestation by *any* legal proceedings. Whether the agreement was intended to encompass extra-legal molestation is, of course, not before us at this time.

The wide reach of the agreement is also indicated by the recital at the outset that it is designed to settle "all property rights and differences existing between them." Even if "differences" might at first be thought to relate back to "property rights," the possible ambiguity resulting therefrom is removed by the broad reach of the non-molestation clause which follows close upon the recital. " 'If both the recitals and the operative part ([of a contract) are clear, but they are inconsistent with each other, the operative part is to be preferred.' " Kogod v. Stanley Co., 1950, 88 U.S.App.D.C. —, 186 F.2d 763, 765.

While we make no attempt now "to decide finally the questions raised," our estimate of the probabilities, based upon a record "lacking any prejudicial element of credibility or non-credibility on the part of either party,"[6] is (1) that the non-molestation agreement was directed at more than matters of property, and (2) that it extends as far as protecting appellant from a suit against another person which would necessarily and inevitably result in molesting him. Thus, we think that appellee's previously-instituted suit should be stayed until appellant's suit is heard on the merits. At that time, after appellant's case is in, it will be open to appellee to show that the words used in the agreement were not intended to mean what they appear to mean or to substantiate her charge that the agreement is void because induced by coercion, misrepresentation, etc.

We hold that, under the circumstances of this case, the District Court erred in denying a preliminary injunction against appellee's prosecution of her independent suit. That conclusion is based in part upon our conviction that the trial court erred in its view, expressed in connection with the petition below for a stay pending appeal, that "it is impossible for the Court by any stay or order in any one case to prevent publicity so long as there is litigation pending between these people. * * * that the Court, if it did grant such a motion, would be making an ineffective gesture to prevent publicity in these cases." It was because of our serious doubt of the correctness of that position that we issued a stay order pending our disposition of this appeal. It seems to us that unless appellee is enjoined from continuing her suit for alienation of affection and for criminal conversation against appellant's present wife, there will be additional and continued invasions of the privacy and sensitivities of appellant and his present wife—all in alleged violation of what appears to be an agreement intended to prevent any such invasion. Against this injury to appellant must be measured the injury to appellee from deferring her suit against appellant's present wife until the meaning and effect of the non-molestation agreement can be finally determined. It seems to us that the balance of injury and convenience on this point, too, is with the appellant. The fact that issuance of a preliminary injunction cannot remove the harm already done by appellee's independent suit is no basis for denying relief against aggravation of such harm in the future. The granting of preliminary relief will tend to minimize any future harm until this suit is decided on the

---

5. In the words of the District Judge, "Lacking any prejudicial element of credibility or non-credibility on the part of either party, the Court turns to the so-called non-molestation agreement of June 17, 1949 * * *." [J.App. 105]

6. See note 5, supra.

merits. Cf. Boone v. Boone, 1940, 217 N.C. 722, 9 S.E.2d 383, 386–388; Bomeisler v. Forster, 1897, 154 N.Y. 229, 48 N.E. 534, 535, 39 L.R.A. 240.

█ In addition to his petition for preliminary relief against appellee's independent suit, appellant seeks to enjoin her counterclaim in the present suit, by which she seeks, *inter alia,* an adjudication that her divorce from appellant, procured by her in the Virgin Islands, is invalid. Before reaching that question, the trial court must determine (1) whether the non-molestation agreement was intended to bar such a suit and (2) if it was, whether such an agreement runs counter to this jurisdiction's public policy with regard to the marriage and divorce of its residents. Only if the parties did not intend to bar a suit such as that in the counterclaim or if, though they intended to, they may not do so, will it be necessary to proceed to the merits of the counterclaim. But since consideration of the counterclaim depends upon an initial determination of the extent of the non-molestation agreement and of its validity with regard to this particular subject matter, we think such consideration should be deferred until the determination has been made. There is no need to reverse the lower court's denial of a preliminary injunction as to this point because the counterclaim, unlike appellee's separate suit, will be within the control of the court below acting pursuant to this opinion.

That part of the order of the District Court denying a preliminary injunction against appellee's prosecution of her independent suit is reversed and the cause remanded for action in accordance with this opinion.

Reversed and remanded.

PROCTOR, Circuit Judge (dissenting).

I think the trial court's refusal to grant a preliminary injunction should stand. The action was in no sense arbitrary or abusive. It was supported by reason and judgment and, therefore, rested well within the court's discretionary power. That is the only legitimate question involved in this appeal. The case must revert to the District Court for trial on the merits. A sharply drawn issue involves the meaning and scope of the non-molestation clause. I cannot escape the conclusion that the real effect of the majority opinion is to decide that issue favorably to the plaintiff's contention, although a correct decision must depend upon evidence yet to be adduced.